Learned, P. J.
The decedent, a boy of about 18, was employed by defendants in their mill. In that mill is a card-room, about 70 by 70, and at the end of it a picker-room, about 50 by 60, In the picker-room are two lappers to knock the seeds, etc., out of the cotton, and two pickers, or, more accurately, mixing pickers. In this picker-room there is what is in some instances called a “blow-room,” and in some a “picker-house.” It is an inclosure about 20 feet long; 12 high, and 12 wide on one side and 8 on the other, cased in sheet-iron. The material of cotton and other substances is mixed on the floor in different layers, and formed into what is called a “mixed batch.” It is then placed by a man upon the pickers, and as they are set in motion the material is carried into the picker-house or blow-room. It seems to be necessary that some one should go occasionally into this blow-room to remove the accumulation of material from the front of the picker. There was a door to the blow-room. Sometimes a man attending one of the pickers would go in, stopping that picker meantime. In that case he would not shut the door. Generally, however, another person would be called to go in. Then the door would be shut, and held by a button till he was ready to come out. The button was about two and a half inches long, fastened with a screw, was loosely held, and would be pushed off by a blow of the hand from the inside. The deceased had been in nearly every day for six weeks. On the day of the accident one of the men at a picker called the deceased to go into'the blow-room for the purpose above described. The deceased went in, and the door was but-
*170 toned. In 10 or 15 seconds afterwards this man saw flames coming from the blow-room through a screen over his picker. He went to the door of the blow-room, and opened it. The room was full of flames, and the flames drove him back. He called to deceased, but received no answer. He saw nothing more until he saw his brother bringing the deceased out from the room, some 10 seconds afterwards. The deceased died from the effects of this burning. There is no evidence as to the cause of the fire. There is no evidence in what part of the blow-room deceased was found. There is no evidence of any attempt on the part of deceased to open the door. Indeed, the sudden flashing into-flames of the loose and combustible material floating in the room probably prevented any escape from the fatal effect of the fire. Flames must have instantly surrounded the deceased, and have been inhaled. It is claimed by plaintiff that probably some nail or other hard substance striking against the revolving teeth of the picker produced a spark, and thus caused the fire. But this is only conjectural. The material, before going into the picker, passed through two other machines, which were supposed to take out all foreign material. It may be conjectured that some one (even the deceased) had dropped a match in the blow-room, on which he trod. It seems to us that, in the absence of all proof of the cause of the fire, we cannot say that the defendants-might be liable. True, the master is bound to furnish safe implements, and a safe place to work in; but it is not in proof that this blow-room was not a safe place. The mere fact that on this occasion its contents took fire does not show that it was unsafe. One witness testifies to a fire in Catskill, which occurred in a rag-picker, not a mixing-picker, and was after this accident. Also of one in Canada, in a mixing picker, where the material had not previously passed through any machine for the process of cleaning, and had only been washed. There is no other proof that there was any danger in this kind of picker, or that the room was unsafe. Furthermore, the deceased knew the premises, and the situation. As above stated, he had been in the blow-room, according to one witness, as often as once a day for the six weeks he had been at the mill. He had worked at similar mills for several years. If this room was dangerous, he had had opportunity to know its danger. If, on the other hand, no such accident had happened before, then the defendants had no more reason to think the place unsafe than he had; for the room was of the usual construction, and there was nothing shown to be imperfect in the machine. The plaintiff urges that the door should have been fastened by a latch, instead of a button, so that it might be opened from the inside. But the evidence shows that the button was so loose that it might have been pushed off by a blow from the inside; and, further, there is no evidence that the deceased tried, but was unable, to get out. He must have been enveloped in flames, and fatally burned, at once. We do not think it necessary to cite authorities. The-general principles are very familiar which govern this class of cases. The only difficulty is in determining the construction to be given to the facts of each case as it is presented. On this the sound judgment of courts may sometimes vary. One court may see a small amount of proof, but enough for a jury, where another court sees none. After a careful consideration of the testimony in the case, we think the judgment should be affirmed, with costs.
Landon, J., concurs.